UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARILYN LINGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:06-cv-219 |
| ) | (VARLAN/GUYTON) |
| SAFETY AND ECOLOGY CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This is an action brought by plaintiff Marilyn Lingle against her former employer Safety and Ecology Corporation (SEC), pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; the Tennessee Human Rights Act (THRA), T.C.A. §§ 42-21-301, *et seq.*; and the Tennessee Public Protection Act (TPPA), T.C.A. § 50-1-304. Plaintiff alleges that defendant discriminated against her by (1) giving two promotions to lesser qualified male individuals that were under 40 years of age; (2) subjecting her to a hostile work environment based on her gender and/or her age; and (3) wrongfully terminating her in retaliation for her complaints about this alleged discrimination. Currently pending is the defendant's motion for summary judgment [Doc. 17]. For the reasons that follow, the motion will be granted and this action dismissed.

## I. *Factual Background*

The following factual allegations are taken from the depositions, exhibits, and interrogatories submitted by the parties and are considered in the light most favorable to the plaintiff.

Defendant SEC provides services in the areas of environmental clean-up, remediation, decontamination, and decommissioning of various Department of Energy (DOE) and commercial sites. Plaintiff was hired by SEC as a Senior Radiological Control Technician (RCT) at its Paducah, Kentucky site in May of 2004. She was 42 years old at the time. [Doc. 20-2, p. 151].

For health reasons, plaintiff asked to be transferred from Paducah to SEC's work site at Oak Ridge, Tennessee, and was transferred in August 2004, where she continued her work as a Senior RCT on the Transuranium (TRU) Project. [Doc. 20-2, p. 149].

In October 2004, plaintiff applied for the position of Lead Technician on the TRU project. That position was awarded to Jim Olexa, age 50. Mr. Olexa had more DOE experience than the plaintiff and also had obtained certification by the National Registry for Radiation Protection Technologists. [Doc. 18-2, p 33].

In November 2004, plaintiff reported to SEC's Human Resources Manager, Michelle Britt, that Mr. Olexa had made some inappropriate comments to plaintiff, including a statement suggesting that the plaintiff was suffering from PMS/Menopause symptoms. In addition, plaintiff reported that Mr. Olexa had stated that plaintiff was going to get colon cancer if she allowed a fellow employee to "blow smoke up [her] ass." [Doc. 20-2, p. 166].

Plaintiff's complaint was investigated by Ms. Britt and also by plaintiff's supervisor, Stephen Vrooman. Mr. Vrooman discussed plaintiff's complaint with Mr. Olexa and, in addition, SEC circulated a required reading regarding its sexual harassment policy. Plaintiff felt like her complaint regarding Mr. Olexa's comments was taken seriously and handled appropriately by the defendant. The statements complained of by plaintiff stopped following her complaint. [Doc. 20-2, p. 173].

On January 7, 2005, the defendant had an opening for someone to serve as Lead Technician of the TRU Project on a temporary basis. Plaintiff applied but Leroy Hicks, a male under 40 years of age, was chosen for the position. The choice of Mr. Hicks for the position was made by Dave Hyder of Bechtel Jacobs (SEC's client on the TRU Project), along with Mr. Vrooman and Brad Ross of SEC. The defendant contends that Mr. Hicks was chosen based upon his job performance and the confidence that SEC's client, Bechtel Jacobs, had in Mr. Hicks. Hicks remained in that position for approximately three months. Plaintiff admitted in her deposition that Mr. Hicks was qualified for the temporary Lead RCT position. [Doc. 18-4, p. 12; Doc. 20-2, p. 177].

Upon learning that Mr. Hicks had been appointed to the temporary Lead RCT position, plaintiff wrote a letter to the DOE's Human Resources Office in Oak Ridge, dated January 9, 2005, complaining that she had suffered retaliation, as well as sex and age discrimination, by SEC. [Doc. 20-2, p. 177].

On May 2, 2005, plaintiff sent an e-mail to Mr. Vrooman and Ms. Britt, complaining that "in the last six month period of time on the TRU Project, I have had two pair of gloves,

3

a belt, and a book stolen, my lunch mutilated, and had someone actually spit in my hard hat. I know that it is literally impossible to pinpoint who, what, when, and why and at this point I do not care." [Doc. 20-2, p. 186]. In response to Michelle Britt's questioning of plaintiff regarding her complaints, plaintiff reiterated that she did not have any idea who had done any of these acts. [Doc. 18-2, p. 46]. Upon questioning by Mr. Vrooman, plaintiff's fellow RCTs on the TRU Project denied committing, seeing, or having any knowledge about plaintiff's complaints of missing items or damaged lunch. [Doc. 18-4, p. 8]. Plaintiff later informed Michelle Britt that plaintiff thought that the problems she complained of in her e-mail were coming from individuals who did not work for SEC. SEC did not have exclusive control over the work site or the employees from other companies that had access to the work site. Accordingly, the plaintiff's complaints were reported to other companies with employees on the work site. [Doc. 18-2, pp. 42-43].

In May of 2005, plaintiff also reported to Michelle Britt that inserts on two signs on the work site had been "flipped around." Plaintiff did not know who "flipped" the inserts, nor does she allege that this incident had any impact on her employment at SEC. [Doc. 20-2, pp. 189-190, 205].

In June 2005, plaintiff voluntarily applied for a position in the Industrial Hygiene (IH) Department. That request for transfer was granted. After leaving her position as an RCT on the TRU Project, and just before beginning her new position in the IH Department, plaintiff received an e-mail from Mr. Vrooman, advising her that she had left a bioassay request in her mailbox at the TRU Project. Accordingly, Mr. Vrooman advised that, "you may want

4

to get a set of bottles for the bioassay though because it was due last week." [Doc. 20-2, p. 205]. Plaintiff was not disciplined or even questioned about the bioassay issue beyond what was communicated to her in Mr. Vrooman's e-mail. In addition, plaintiff has no knowledge of Mr. Vrooman informing anyone else of the bioassay incident.

Plaintiff started her new position as the IH technician at the end of June 2005. Her duties included sampling for exposure to non-radioactive workplace hazards and writing reports with the results. The IH Department is completely separate from plaintiff's previous work on the TRU Project, both in terms of personnel and physical location of the work site. [Doc. 18-2, p. 23].

Plaintiff's supervisor in the IH Department was Caren Sedlacek. During the period of plaintiff's employment in the IH Department, Ms. Sedlacek did not have any knowledge of plaintiff's letter to DOE or any of plaintiff's complaints of harassment, discrimination or retaliation. [Doc. 18-6, p. 28]. After commencing her employment in the IH Department, plaintiff completed the core training that was provided to incoming technicians. [Doc. 18-6, p. 9].

On October 27, 2005, Jimmy Walker and Dave Gettelfinger conducted a formal verbal warning with plaintiff regarding her lack of teamwork and initiative in the performance of her job. Plaintiff admitted to leaving her fellow employee during an assignment and spending too much time socializing in the hall. [Doc. 20-2, p. 215].

Plaintiff filed a charge of discrimination dated November 28, 2005, with the EEOC, and that charge was stamped "Received" by the EEOC on December 5, 2005. In her EEOC

charge, plaintiff complained that, among other things, she had been denied promotions to the Lead RCT position. That charge was filed more than 300 days after defendant appointed Mr. Olexa to the Lead RCT position in October 2004, and more than 300 days after Leroy Hicks was appointed temporary Lead RCT on January 7, 2005.

On January 18, 2006, plaintiff received a formal written reprimand in the form of an Employee Disciplinary and Counseling Form. The reprimand pertained to two incidents, the first occurring on December 20, 2005, and the second on January 3, 2006. With regard to the December 20 incident, SEC received notice from its client, Bechtel Jacobs, that plaintiff had failed to pick up an asbestos pump that she had dropped off the previous day for sampling, which resulted in the sample being voided. Plaintiff admitted that she forgot to bring in the pump as required. [Doc. 20-2, p. 219]. With regard to the January 3, 2006 incident, plaintiff failed to inform her superior that she had left samples on her desk, causing the IH Department to miss the contractual date for those samples. [Doc. 20-2, Ex. 7]. An Employee Disciplinary and Counseling Form provided to and signed by plaintiff on January 18, 2006, provides an explicit expectation that plaintiff will "comply with all requirements of the IH Technician position. Ms. Lingle is to notify her immediate supervisor in the event she is unable to complete an assignment, does not understand an assignment, or is having difficulty with an assignment." [Doc. 20-2, Ex. 7]. The form further indicated that plaintiff must reform her performance "immediately" and that failure to comply would result in "further disciplinary action up to and including termination." [Doc. 20-2, Ex. 7].

6

On February 9, 2006, plaintiff informed David Gettelfinger and Caren Sedlacek that eight samples that she had taken on the 1501 Project were missing. Based on plaintiff's information, an immediate investigation was launched for the missing samples, including interviews of witnesses and notification of the client, Bechtel Jacobs. The investigation for the missing samples revealed that plaintiff had not taken any samples on the 1501 Project that week. When confronted with this information by Caren Sedlacek, David Gettelfinger and Jimmy Walker, plaintiff admitted that she had been confused and that there were, in fact, no samples taken and, thus, no samples missing. It is undisputed that it was plaintiff's fault that Bechtel Jacobs had been given a false alarm regarding the missing samples.

On April 6, 2006, plaintiff was counseled by Michelle Britt for being absent without calling in to notify her supervisor prior to the start of the shift. Plaintiff admitted that she did, in fact, fail to call in and notify her supervisor. [Doc. 20-2, p. 228].

On April 12, 2006, plaintiff and her supervisor, Caren Sedlacek, signed plaintiff's Employee Performance Evaluation (2006 Evaluation) for the period March 29, 2005, through March 28, 2006. [Doc. 20-2, p. 232; Ex. 8]. On that evaluation, her supervisor rated the plaintiff as "below expectations" in the area of communication. Specifically, plaintiff was cited for failing to communicate problems and issues to SEC's supervision, causing SEC's supervisors to hear about problems and issues through its customer, Bechtel Jacobs. [Doc. 20-2, Ex. 8]. In the same evaluation, plaintiff was also rated as "below expectations" in the area of problem-solving/decision-making and was specifically cited for offering problems without suggesting solutions and shopping around for answers, *i.e.*, asking others the same

7

question after the question had been answered. [Doc. 20-2, Ex. 8]. In addition, plaintiff was rated as "below expectations" in the area of initiative and was cited for not volunteering when new jobs or tasks were available. [Doc. 20-2, Ex. 8]. Plaintiff was also rated as "below expectations" in the area of attendance and was cited for having non-scheduled absences and not notifying her supervisor in a timely manner, causing sampling for that day to be late or missed. [Doc. 20-2, Ex. 8]. Further, plaintiff was rated "below expectations" in the area of dependability and specifically cited for unscheduled time off and failing to inform her supervisor in a timely manner. She was also rated "below expectations" in the area of procedural knowledge. [Doc. 20-2, Ex. 8].

On April 24, 2006, plaintiff received a Final Employee Disciplinary Report that resulted in the termination of her employment. Her alleged offense related to her failure to complete the IH logbooks as directed by her supervisor during the week of April 21, 2006. [Doc. 20-2, Ex. 9]. Earlier in the week of April 21, 2006, plaintiff and a fellow IH technician, Ronnie Scott, responded to an emergency on Monday, April 17, 2006, by obtaining samples. Mr. Scott proceeded to input and complete his post-calibration entries on Tuesday, April 18, 2006. [Doc. 18-6, p. 13]. On Wednesday, April 19, 2006, Caren Sedlacek was exchanging old IH calibration logbooks with new logbooks and noticed that plaintiff had not completed several post-calibration entries. Ms. Sedlacek sent an e-mail and talked with plaintiff on Wednesday, April 19, 2006, informing plaintiff that the logbooks needed to be up-dated and corrected no later than Friday, April 21, 2006. [Doc. 18-6, p. 11; Doc. 20-2, Ex. 9].

Despite receiving an express instruction from Ms. Sedlacek to complete the IH logbooks by Friday, April 21, 2006, plaintiff did not complete the entries as directed, nor did she notify Ms. Sedlacek that the task would not be completed as directed. [Doc. 20-2, Ex. 9]. Plaintiff has admitted that she was charged with committing the violation reflected in the Final Employee Disciplinary Report dated April 24, 2006. [Doc. 20-2, p. 236]. She has also admitted that the alleged reason for her termination was the unsatisfactory performance of her job. [Doc. 20-2, p. 237].

## II. *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material

evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

### III. *Plaintiff's Promotion Claims*

A party must file a charge of discrimination with the EEOC challenging claims under Title VII and/or the ADEA within either 180 or 300 days of the alleged unlawful employment practice, depending upon whether the alleged practice occurred in a "deferral state." *See* 42 U.S.C. § 2000e-5(e)(1). Because Tennessee is a deferral state, the limitations period in Tennessee is 300 days. When evaluating whether a charge of discrimination is timely filed, only those incidents alleged in the charge that occurred within the 300-day time period will be considered actionable. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). For purposes of determining when the 300-day period begins, the alleged discriminatory act "occurs" on the date the employee received notice of the adverse action (*e.g.*, the date he or she received notice that he or she was denied a promotion). *See Chardon v. Fernandez*, 454 U.S. 6 (1981). In the instant case, plaintiff's charge of discrimination was

dated November 28, 2005, and was stamped "Received" by the EEOC on December 5, 2005. Therefore, any discrete discriminatory acts referred to in the charge occurring before February 1, 2005 (*i.e.*, 300 days prior to November 28, 2005) are untimely. In this case, plaintiff's January 9, 2005, letter to the Department of Energy referenced both the promotion of Jim Olexa and the promotion of Leroy Hicks. Thus, no question of material fact remains that plaintiff received notice of these employment decisions prior to January 10, 2005. Accordingly, both of her claims that she was discriminatorily passed over for a promotion are untimely, and plaintiff has failed to exhaust her administrative remedies.

Plaintiff has claimed that these two denials of promotions were part of a "continuing" violation. That allegation is not supportable. Discreet discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely-filed charges. *National R.R. Passenger Corp.*, 536 U.S. at 113. The United States Supreme Court has expressly stated that "[d]iscrete acts such as termination, failure to promote, denial or transfer, or refusal to hire are easy to identify." *Id.* at 114. The Court concludes therefore that as a matter of law plaintiff's two failure to promote claims cannot survive under a "continuing violation" theory.

Even if the failure to promote claims were not time-barred, plaintiff cannot establish a prima facie case of sex or age discrimination. In order for plaintiff to establish a claim of sex and/or age-based discrimination for failure to promote, plaintiff must present sufficient evidence under the framework of proof as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, complainant must first establish a prima facie

case of discrimination by showing that: (1) she is in the protected class (female and at least 40 years old); (2) she applied for and was qualified for the promotion; (3) she did not receive the promotion; and (4) the position remained open after plaintiff was rejected or went to a less-qualified applicant that was not a member of the protected group (substantially younger, less-qualified, male applicant). *See White v. Columbus Metropolitan Housing Authority,* 429 F.3d 232, 240 (6th Cir. 2005). If plaintiff can establish a prima facie case of discrimination, then the defendant must explain its business justification for the personnel decision that was made. If the defendant satisfies this burden of production, plaintiff must introduce evidence showing that the proffered explanation was pretextual. *See id.* Plaintiff can establish that the reasons offered by the defendant are pretextual by showing "(1) that the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the action; or (3) they were insufficient to motivate the action." *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329-30 (6th Cir. 1994). However, "[a] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). While the burden of production shifts back and forth between the parties under the *McDonnell Douglas* framework, the ultimate burden of proving that the defendant discriminated against the plaintiff on account of her sex and age remains at all times with the plaintiff. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186-87 (6th Cir. 1996).

In the case of Mr. Olexa's promotion, there is no dispute that Mr. Olexa, at age 50, was older than the plaintiff, and consequently her allegation that the promotion was given

to a male under 40 is not accurate. Further, there is no dispute that Mr. Olexa had more DOE experience than the plaintiff and that he had a national radiological control certification that plaintiff did not have. Accordingly, plaintiff's allegation that the promotion was given to a lesser qualified male is also inaccurate, and it is not possible for plaintiff to show that sex or age played a factor in her non-selection.

In the case of Mr. Hicks's promotion to the temporary Lead RCT position, it is undisputed that the defendant's client, Bechtel Jacobs, recommended that Mr. Hicks be promoted to the position. Plaintiff herself admitted that Hicks was qualified to hold the position. Selecting an employee for a position based upon a customer's preference for a particular employee is a legitimate, non-discriminatory reason for selecting that employee. *Combes v. AIG Consultants, Inc.*, No. 95C 1865, 1996 WL 596397 at *2 (N.D. Ill. Oct. 10, 1996). There is simply no support in the record that sex or age was a factor in the decision to promote Mr. Hicks rather than the plaintiff.

## IV. *Plaintiff's Hostile Work Environment Claim*

Title VII prohibits employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). To establish a hostile work environment claim, plaintiff must show that: (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and (5) defendant failed to take reasonable

13

care to prevent and correct any sexually harassing behavior. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462-63 (6th Cir. 2000).

The only comment that plaintiff complained about to defendant's Human Resources Office was the single statement by Mr. Olexa that plaintiff was suffering from PMS/Menopausal symptoms. Plaintiff admitted that following the defendant's investigation of plaintiff's complaint about the comment, Mr. Olexa did not make any other allegedly inappropriate comments. Accordingly, Mr. Olexa's single statement does not rise to the level of discrimination based upon sex.

Plaintiff's other allegation that she had certain personal items stolen or damaged at the work site, that certain required inserts on signs posted at the work site had been "flipped around," and that she did not receive a bioassay request from her former supervisor on a timely basis do not constitute a hostile work environment. Certainly there is no evidence that these incidents were based on her sex or age. It is also undisputed that when it was notified, the defendant took reasonable care to prevent and correct any harassing behavior that may have occurred. Moreover, plaintiff admitted that it was impossible to determine who was responsible for these problems, or even whether they were employees of the defendant.

Even if there was harassing conduct, it was not severe and pervasive such as to constitute a hostile work environment. The United States Supreme Court has instructed the courts to look to the totality of the circumstances when making this determination. *See Farragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). While no single factor is required or conclusive, considerations relevant to the determination may include "the

14

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000). Moreover, "[p]ersonal conflict does not equate with discriminatory animus." *Morris v. Oldham County Fiscal Corp.*, 201 F.3d 784, 791 (6th Cir. 2000).

In the instant case, there is no proof that any alleged harassment was severe and pervasive enough to interfere with plaintiff's work performance. Nor is there anything in the record to indicate that any of the alleged harassment had anything to do with plaintiff's sex or age.

## V. *Plaintiff's Claim of Discriminatory or Retaliatory Termination*

To establish a prima facie case of unlawful retaliation under Title VII, an employee must show that "(1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendant; (3) thereafter, defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If plaintiff establishes her prima facie case, the burden then shifts to the defendant to establish legitimate, non-discriminatory reasons for its employment action. If defendant is able to do so, the plaintiff must then demonstrate that the reasons offered by the defendant are a mere pretext for discrimination by showing that "(1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the action; or (3) they

15

were insufficient to motivate the action." *See Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).

In this case, the only adverse employment action taken by the defendant against the plaintiff subsequent to her letter to the DOE dated January 9, 2005, and the filing of her EEOC charge dated November 28, 2005, was her termination of employment in April 2006. There is simply no causal connection between those events. In fact, there is a long history of unsatisfactory job performance throughout this period of time that was well documented. For example, on October 27, 2005, plaintiff received a formal verbal warning regarding her lack of teamwork and initiative. On December 20, 2005, the defendant received notice from Bechtel Jacobs that plaintiff had failed to pick up an asbestos pump that she had dropped off the previous day for sampling. Around January 3, 2006, plaintiff received a formal written reprimand after she failed to inform her supervisor that she had left samples on the supervisor's desk. Around February 9, 2006, plaintiff was at fault in causing a "false alarm" with Bechtel Jacobs regarding missing samples. On April 6, 2006, plaintiff was counseled by Ms. Britt for being absent without calling in. On April 12, 2006, plaintiff and her supervisor, Ms. Sedlacek signed off on the 2006 performance evaluation which rated the plaintiff as "below expectations" in at least six areas. At that time, Ms. Sedlacek had no knowledge of plaintiff's DOE letter or the EEOC charge. Finally, on April 24, 2006, plaintiff received a final "Employee Disciplinary Report" relating to her failure to complete IH logbooks as directed by her supervisor, and this final incident resulted in her termination. There is no evidence in the record to support a finding that plaintiff's termination had

anything to do with her age or sex, and the evidence of record is overwhelming that defendant's proffered reason for plaintiff's termination, inadequate performance at her job, was legitimate.

For the same reasons that plaintiff's federal discrimination claims fail, plaintiff's claims brought under the THRA also fail. The Tennessee Supreme Court has held that "THRA claims are analyzed in the same manner as Title VII claims." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999).

Finally, plaintiff cannot establish the essential elements of a claim under the TPPA. In order to pursue such a claim, plaintiff must establish each of the following four elements: (1) plaintiff's status as an employee of the defendant; (2) plaintiff's refusal to participate in, or remain silent about, illegal activities; (3) defendant's discharge of plaintiff; and (4) an exclusive causal relationship between plaintiff's refusal to participate in or remain silent about illegal activities and defendant's termination of plaintiff. *See Griggs v. Coca Cola Employees Credit Union*, 909 F.Supp. 1059, 1063 (E.D. Tenn. 1995). In this case, plaintiff cannot establish any facts demonstrating an exclusive causal relationship between her DOE letter and EEOC charge and her discharge from employment more than a year later. To the contrary, plaintiff's well-documented history of unsatisfactory job performance unequivocally establishes that her discharge was unrelated to any alleged protected activity.

## VI. *Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Doc. 17] is hereby GRANTED, and this action is DISMISSED.

Enter judgment accordingly.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE